Case number 17-3015, United States of America v. Gary Cooper Appellate. Mr. Zucker for the appellate, Ms. Kim for the accolade. Good morning. Good morning. You've been advised Judge Henderson is with us today. I have. And she's sorely missed, but we enjoy her participation by phone. There's three issues in this case. The prosecution concedes that the sentencing, a 68-month sentence exceeded the statute, and that's clearly going to be resentenced. And the two issues remaining are, was it error to apply the two-point enhancement for a fiduciary against Mr. Cooper when the government concedes and it's clear he was not a fiduciary? The second is, were Counts 1 and 2 multiplicitous, i.e., and Counts 1 and 2 were the conspiracies, the two 371 conspiracies, and the question is, do they reflect one conspiratorial agreement or are they, as the government charged, two separate agreements? I'd like to begin with the fiduciary issue first. The defendant was charged with two counts with conspiracies, both 371s. The first was essentially a conspiracy to steal from a labor union. The second one was what I'll call kickbacks, payments to the labor union official, the fiduciary, in this case Mr. Frederick. The guidelines applicable in the first conspiracy are 2B.1.1, which is also the same guideline applicable in Count 3. And then the second count is 2E.5.1. The court correctly decided it had to group and figure out what the guidelines were under each count first, separately, and then group them together and go with the highest one, and it correctly found that Count 2, which is the 2E.5.1, is the highest defense level and went with that. Count 2 had a base defense level of 10 and an enhancement of 16 based on the quantity involved, and there was no contest about any of that. The contest comes because Count 2 is the only one, the 2E.5.1 guideline, is the only one that has an enhancement for a fiduciary, and there's a two-point enhancement which the court applied. Our claim is that that is error because Mr. Cooper was clearly not a fiduciary. He had no role in the union. He was not – there was no claim. Even the government conceded. Mr. – where do you make this argument in your brief? Where do I make this argument? Yeah, uh-huh. That which? The one you're now talking about. That he wasn't a fiduciary? Yeah. No, that the judge went to the wrong guideline. I believe it's throughout the brief, Judge. Uh-huh. I believe we – I know it's in the reply brief. Huh? I know it's in the reply brief. I believe it was in the initial brief as well. Uh-huh. But that's clearly the error we're alleging here, and that was what we objected to at trial, and that's what we, I believe, briefed in the original brief, that it was a – that the fiduciary enhancement should not have been given because he wasn't a fiduciary, and that the court became confused because it applied the 2X2.1, which applies to aiding and abetting. Now, the defendant was charged as an aider and abetter, not in counts one and two, but only in count three, which is the honest services wire fraud. Right. And based on that, I believe the court – the trial court became confused and applied – 2X2.1 says that if you're convicted as an aider and abetter, you're sentenced for the offense, the same offense as if you were principled. The district court should have gone to 2B2.1, right? Yeah. That's the one he should have used. Well, no. He had to use 2B2.1 on counts one and three. Yeah. And he should have used 2E5.1 on count two.  Uh-huh. And I believe he became confused in that because of the aiding and – he relied on the aiding and abetting guideline for 2X2.1, which says that an aider and abetter is sentenced for the same offense. And there's no dispute about that. But he was prosecuted only as an aider and abetter in relation to count three, which is sentencing guideline 2B1.1. And that doesn't have a fiduciary enhancement. But even if it did have a fiduciary enhancement, it shouldn't be applied because Mr. Cooper was not a fiduciary. I think where the court became confused is that it correctly ruled, not below but in the first sentencing, that Frederick, who was an officer of the corporation – of the union, is a fiduciary, and that applied to him. And I think the confusion became when the judge said, okay, but an aider and abetter has the same offense. Yes, that is correct in relation to count three. It isn't correct in relation to count two. And more importantly, by conspiring with a fiduciary, you do not get the enhancement for being a fiduciary. It's an enhancement based on status, based on your role as a fiduciary, and it simply should not have been applied, in this case, against Mr. Cooper. It was error to do so and prejudicial error. That's the gist. If there's anything else, questions on that, I'll be glad to respond. Otherwise, I'll move to the multiplicitous conspiracy. Okay. All right. I think the defense and the government both agree that if these – if count one and count two are both part of the same conspiracy, then this is multiplicitous. And I think the best proof – the government charged it as two separate conspiracies, one for theft, essentially, in count one, and then payments to the union official in count two, which the government prosecuted as two separate conspiracies. But if we look at the – I'm sorry, the prosecution's theory at trial, they prosecuted count two as essentially the quid pro quo for count one. It was argued throughout in both openings and closings by the prosecutor was you look at the interrelationship between the two. They started off with theft based on contracts for construction services at the union headquarters, and then that went on for a while, I think approximately a few weeks. And then there was the second portion or the second half of the agreement, which was the payback, the kickback to Frederick for making the payments. And as the prosecutor argued, you look to the two combined, and one was the payment for the other. Under that explanation, and I think the prosecutor was right, they are one conspiracy, not two, because they're separate parts of the same conspiracy. It would be analogous to saying I as a drug dealer consigned or fronted a quantity of drugs to someone else who sold them and came back and paid me a few weeks later or a few days later. That's all part of one agreement to distribute drugs. It's not two separate agreements to distribute drugs and then pay for drugs. And that's what the government tried – not what they tried, it's what they did do here. The kickbacks clearly given to Frederick, and they were the House, and the improvements to the House, were clearly the quid pro quo, the payment for Frederick assisting STS Corporation to be paid absorbent sums for work, overpaid for work they did do, and then ultimately, as the agreement progressed, paid absorbent sums for work that was never done, which is falsified claims. So the government argues that we should review this for plain error because trial counsel didn't renew the multiplicity motion at the end of trial. I disagree with that because we – Yeah. Huh? Yeah. Why? Because we complied with the rule. The rule said move – you have to move pretrial for a multiplicitous indictment. That was filed. The judge heard it. We argued it. He essentially said, well, he denied it and said we could revisit it after the verdict or at sentencing. And, frankly, I suggest we can – He says it even more strongly in the written order, defers ruling until after a verdict is rendered. I'm agreeing with you. Don't fight me. Huh? I'm agreeing with you. Don't fight me. That's wise of you, Judge. I appreciate that. I think – would the better practice on my part have been to say, hey, Judge, you forgot to go back and rule on this? Yeah, exactly. Yes, I think that should have. That's the question. That should have. And in an optimal world, I would have done that, should have done that. However, I don't think it converts it to plain error to say, oh, your failure to renew it at the close of – at the time of sentencing weighs what you have filed and what the judge denied initially. So I – I mean, I frankly should apologize in the sense he was a new judge and I should have thought of that, but I didn't in the heat of battle. But nonetheless, we preserved the issue by complying with the rule, making the motion in advance, and having him deny it in advance or at least not address it. Not denied. Not denied. He deferred ruling and then never did rule. I mean, I guess implicit is a denial in his ruling. Well, the motion, as I understand it, the motion that he was denying, included more than just the multiplicity issue, right? I think it did. So you denied everything except the multiplicity, correct? That's what happened. Isn't that right? In all candor, that's the only part I remember because that's what was part of this brief, but I am not surprised to find I included other requests for relief in my initial motion. Yeah, but my position is – But that helped your case. Which helped my case? What I just said. Okay. Then I agree with both of you. All right. And then if there's no more questions, I'll quit while I'm ahead. I have one. Thanks. Mr. Zucker, let's assume that we agree with you on all three points, that it's multiplicity, the district judge has to choose either count one or count two. I'm sorry, Judge, could you keep your voice up a little bit? Okay. Assume we agree with you on all the points, that we send it back, district judge has to choose count one or count two, the enhancement gets lopped off, 60 months maximum for whichever conspiracy count remains. My question is, and I don't think either party really addresses this, is he still free to give the 68-month sentence? And if so, is this, at least with respect to the resentencing, more or less ministerial, this remand? Well, I think on a remand the judge has latitude and can frankly restructure a sentence to achieve a sentencing objective that's different than what was imposed in the first one. I do not think, and it's an interesting question, and I can't pretend I've researched it as part of the preparation for this. I know that on remand judges are allowed to resentence and structure their sentences differently. Whether he would be allowed to increase it back to 68 months when the clear import of being consistent would be to knock off the eight months and leave it at 60 months concurrent for two counts, I don't know if that would be a violation. I don't think so. I think he has discretion. I'm sorry, judge, let's keep your voice up. It's hard to hear you. Did I cut her off? No. Karen, are you still there? Yes. Oh, you know, you don't have something on your—I'm speaking to Mr. Zucker. Do you have a knob on there that turns up volume? Look, we do. Not that I know of. No? Thank you. Appreciate it. Okay, go ahead again, Karen. He was just having trouble hearing you. Okay. I'm just asking about on remand, if we agree with you, either party has addressed this, and if we do agree with you, I don't know that we need to be in the hands of the district court in the first place, but do you have a position on what the sentence—can the sentence be more than 60 months? Can it be 68 months? Hello? Hello? Hello? Oh, you still there? Oh, I see. I think you've answered—can you hear me? Yes. Okay, I think you've answered my question about this. I don't want to disrupt the proceedings. All right. If you can hear me and I can't hear you, my colleagues will tell me what you've said. We can hear you much better now. At least I can. Okay. Well, then my question was simply, can he reimpose the 68-month sentence, or do you have a position on that? I don't really have a position. I know that he can restructure it, and certainly if he said, you know what, I'm going to run portions of these sentences consecutive, he could get there legally. Whether or not that would be an abuse of discretion on a remand, I don't know the answer to that. Okay, thank you. Can we go ahead now, Jane, please? Yes. Is it reset? Yes. Okay, great. All right. Did you have anything else? I did not. There's no other questions. Okay. We'll hear from the government then. Thanks. Thank you. Good morning, and may it please the Court. Rachel Tim on behalf of the United States. Mr. Cooper's claims fail, and except that this Court should remand for the limited purpose of resentencing within the statutory maximum on Counts 1 and 2, this Court should affirm Mr. Cooper's convictions and sentence for several reasons. With respect to the multiplicity claim, this Court applies a five-factor totality of the circumstances test. Are you now acknowledging that this is not for plain error, that we should apply our normal standard here? The government's position is that plain error review still applies to this case. Well, what's your reaction to Mr. Zucker's point that he did what the rules require? He made the motion, and the Court deferred ruling until after trial. Your Honor, the United States' position is actually that the fact that Mr. Cooper raised two issues in his motion to dismiss is actually a ways in the government's favor in this case because that makes the Court's ruling on his motion to dismiss based on multiplicity clear. Because of this and because the Court expressly stated that it was deferring ruling until the verdict, Mr. Cooper's counsel had the responsibility to raise this objection if a verdict was returned guilty, which, in fact, it was. But why? He raised it pretrial, and the Court deferred its ruling until after trial. As he said, sure, it would have been nice if he had done it, but do you know of any case, I could not find a case directly on point where the motion was made with respect to multiplicity. In this Court's opinion in United States v. Anderson, which is a case that's cited in the United States brief, the Court determined that the true objection in a similar multiplicity claim was that the sentence on the multiplicitous count itself was illegal and stated that the appropriate time to object to that sentence was after sentencing. The United States does recognize that in this case, the Anderson case, the defendant didn't raise this issue pretrial. But other cases that support the government's position like the case— That's a major difference. I mean, it's just not the same case. It is different. It's like irrelevant. This case is also not unlike a case where a defendant files a pretrial motion in limine under Rule 12, and the Court defers ruling as in the Galati case, which is an evidentiary question, and that's a Seventh Circuit opinion cited by the United States. And in that case, the Court expressly conditioned the pretrial ruling and then found that because the defendant didn't raise his objection at the time that the evidence came in at trial, that the Court's review was for plain error. The cases that deal with multiplicity really underpin the United States' position because, as the Court can see, these cases are highly fact-dependent. And for this reason, the district court should have had the opportunity to make the determination, because the district court was the Court. The district court did have the opportunity. The issue we're wrestling with was that it wasn't prompted. In the United States' position— But the issue was raised, and he said the Court defers ruling. The United States' position is that the Court's ruling and stating that its ruling was deferred until after verdict created a responsibility of the defendant to raise the objection at the end of trial. Even still, even under a de novo review, the five— Okay, why don't you just go on to that now, just go on to the argument about multiplicity. The five factors in this case establish that Mr. Cooper entered into two separate and distinct conspiratorial agreements. Do you have any case where the interdependence is so extreme as this case that the other four factors somehow or other outweighed it? Well, in the United States v. Machia, that case, the Ninth Circuit found that the conspiracies had relative interdependence, but did actually find that that favor still weighed in favor of finding two conspiracies. That case is actually not that much different from this case in that, in fact, the criminal objectives in that case to distribute bootleg gasoline and avoid taxes is actually—those are much more closely related than the objectives in this case. And in the Machia case— Was that a deal where one conspiracy is to move money one way and the other conspiracy is in exchange for the first to move money the other way? It seems like a contract. It is a contract.  That case is distinguishable for the reasons that Your Honor pointed out. But in Machia, the defendants did rely on the same network to distribute the bootleg gasoline, which is not unlike interdependence in this case. In this case, I would point out— Well, but it isn't. It's just that roughly the same people engaged in Machia in kind of similar transactions at somewhat different times, but it wasn't A goes and sends money to B and B sends money to C, and that's the deal, which is the deal here. I would point out that at the time that the theft conspiracy was first agreed to, which was at least by May 15th of 2013, there was no evidence in the record that Mr. Frederick had stated or implied that he expected to receive something in return. And by that date, on May 15th of 2013, the theft conspiracy was already in full force. That's evidenced by the website that SDS Construction created, indicating that they had really just grossly exaggerating SDS's capabilities. That's indicated by the signing of the $1.4 million contract for $500,000 worth of work, and that's indicated by Mr. Frederick's acts in signing that contract without first going to the board, which he had done numerous times before when signing contracts for such an expenditure. That's evidenced by the fact that by June 4th, before the second conspiracy was entered into, SDS had already received five checks totaling about $23,000 for some work that had been performed but a lot of work that had not been performed. By the time that these parties went to look at that house in Upper Marlboro in mid to late June of 2013, the theft conspiracy, which at least began on May 15th, 2013, was already in full force. While Mr. Frederick may have had in his mind at the time that he agreed to enter into the theft conspiracy that he wanted to ask for something in return or would pocket that and ask for something in return, doesn't change what was actually established at the time of the agreement. Even on your account, it seems as if a substantial period of the activity of the conspiracy is a flat-out exchange. That's true. It's not an exchange for corrupt practices. The government did have to establish that first scheme to defraud, which is different from a conspiracy under Count 2. However, the overlap in the agreements is not dispositive, and that's another point that's well demonstrated by Mafia. We have something more than overlap here. There is a relation, but each of the counts could have stood alone. For example, the conspiracy charged in Count 2, these parties would have violated the law no matter where that money came from. The unlawful labor payment from SDS Construction Company to the manager of Local 657 was unlawful, regardless of where the money came from. In this case, it did come from Local 657's bank account. I see that I'm almost out of time. Do you want to say anything about the sentencing issue? I would like to address the sentencing issue. With respect to the fiduciary enhancement issue, I would like to clarify the record in the guidelines calculation. The district court applied Section 285.1 on the basis of Count 3. That is the count Mr. Cooper was convicted of on a theory of aiding and abetting, and that is found on the joint appendix, page 124 of the sentencing transcript. Mr. Cooper did not assert error to this application in his opening brief. Thus, he's waived any objection to the application of 2E5.1 on the basis of Count 3. Moreover, at sentencing, when the district court explained that Count 3 formed the basis of 2E5.1, defense counsel responded, I'm not quarreling with that. And the district court went on to explain how the district court thought that the aiding and abetting of a fiduciary was the basis of Count 3, quoted language from Count 3, and made it clear that the district court knew it was applying 2E5.1 on the basis of Count 3. This is not an error. Mr. Cooper's guidelines calculation is correct up to the point that he indicates that the wire fraud statute in the statutory index leads the court to 2B1.1, but what he leaves out, and this is crucial, and the government didn't have the opportunity to respond to this because he did waive this argument in his opening brief. 2B1.1 has a cross-reference section, and that cross-reference section, C3, under that guidelines applies to this case. And that C3 in 2B1.1 states that when a defendant is convicted under a number of statutes, including 1343, and the conduct set forth in the count of conviction establishes an offense, specifically covered by another guideline in Chapter 2, apply that guideline. So in this case, through 2X2.1, all the way up to 2B1.1, going to the cross-reference section in C3, the district court properly applied the other guideline section, which is the labor and racketeering bribery and kickback guideline section to Count 3. And the district court made it clear that he understood that this was a bribery and kickback scheme. At this point, if the court doesn't have any other questions, I could answer Judge Henderson's question about the government's position on sentencing, but... Why don't you do that real quick? Okay. Judge Henderson, the answer to your question, at least from the government's perspective, is that under the sentencing doctrine package, or the sentencing package doctrine, that this court should, if the court rules in favor of the government on either the multiplicity issue or the sentencing enhancement, this court should remand for resentencing as a whole, especially if one of the convictions is vacated. Okay. Thank you. Did Mr. Zucker have any time left? Okay. You can take a minute. Thank you, Justice. Yeah. Just two quick points. I think the prosecution's factual claim about the $23,000 that preceded the June date is revealing. This is a $1.7 million conspiracy, and the $23,000 is relatively chump change. It doesn't really reflect much of a criminal activity. There was work done that might have been inflated. But it was at the point when the decision was made to buy the house, which was the kickback to Frederick, that the money got serious. That next day or within the next two days, there were hundreds of thousands of dollars that were given to SDS from the union that Frederick authorized, and that's where it shows the interrelationship, and that's where the quid pro quo is most revealed. I disagree with the prosecution. I believe the judge in his pre-sentencing memo indicated that 2E5.1 applied to Count 2, not to Count 3, and that's where the fiduciary relationship enhancement comes in. But even if I am mistaken, and even if the judge used 2E5.1 in sentencing on Count 3 rather than 2B1.1, it really shouldn't matter because the issue is Cooper was still not a fiduciary, and he shouldn't get the fiduciary enhancement because a co-defendant was a fiduciary. If there's anything else. Okay. Thank you. Thank you. Case submitted.
judges: Henderson, Tatel, Williams